* CLEMENT v. HYDE.

[IN CHANCERY.]

*Charitable Uses.*

A bequest of the use and income of money to be "expended in the education of the scholars of poor people" in a certain county, is a valid gift to a charitable use, and will be executed under the administration of the Court of Chancery.

APPEAL from the Court of Chancery.

On July 23, 1859, the orator, as the executor of the will of David Poor, then lately deceased, paid the defendant, then and still the treasurer of Orange County, the sum of $1,000 in payment of a bequest as follows:

I give the use, interest, and income, after my decease, the sum of one thousand dollars in cash, to the treasurer of the County of Orange and his successors in office; the income of said one thousand dollars to be expended in the education of the scholars of poor people in the County of Orange.

At the June Term, 1875, the orator, executor as aforesaid, filed a bill, alleging that said fund had lain idle and unproductive; that no part thereof, nor of the interest or income, had been expended or applied for the purpose named in the bequest; and that there was no way in which the purpose named in the bequest could be

carried out.    Prayer, that defendant be decreed to return the money to the orator, to be by him held subject to the order of the Probate Court having jurisdiction thereof, for the benefit of those having an interest therein, or to pay the same to the persons entitled thereto under the bequest; and that, if he should be decreed to pay under the bequest, the court might decree how and to whom it should be paid ; and for general relief.

The defendant answered, admitting the bequest, the receipt of the money, and the non-use of the income thereof for the purpose specified; alleging that he had been unable to use the income ; denying that the trust was incapable of execution ; and asking the court to devise a scheme whereby it might be executed.

The cause was heard on bill and answer, at the December Term, 1876, when the court, Powers, Chancellor, adjudged that the bequest was a valid gift to a charitable use, and capable of execution in accordance with the donor's intention ; and ordered the cause to be referred to special masters, to ascertain the amount of the fund, and to devise a scheme by which the trust could be executed and the trustee's accounts periodically adjusted.' Costs to both parties and reasonable counsel fees for the defendant were allowed out of the fund, to be ascertained by the masters.

Appeal by the orator.

*S. B. Hebard*, for the orator.

The Court of Chancery has jurisdiction.    The bequest was to a charitable use, but void for uncertainty.    No class of poor people is pointed out; nor any kind of education specified ; nor any scheme marked out for the distribution of the income of the fund.    2 Perry Trusts, 300.

If the bequest is void, the fund should revert to the testator's heirs.

*C. W. Clarke*, for the defendant.

The gift comes fully within the definition of a public charitable use, whether construed according to the common meaning of language, or with reference to the statute of Elizabeth, and the rulings of the courts thereunder.    The plain intent of the testator

was to benefit and relieve a particular *class of the poor.*   2 Redf. Wills, 772, 775, and cases cited ; *Exrs. of Burr* v. *Smith*, 7 Vt. 241.

The bequest is not indefinite.   The testator has expressed his intent in clear language.   The *class* of beneficiaries is made certain.   The testator used the word *scholars,* and we may reasonably suppose that he intended to restrict the gift to a selected number out of the great crowd of children of poor people.   It must therefore be considered that the testator intended that somebody should exercise a *discretion*, not only in the selection of the individual beneficiaries, but also in the division amongst those selected.   The trustee is clothed with ample power under the will, to nominate and appoint out of the class named, the individuals to whom aid will be afforded out of the income of the fund, and to make a discretionary division of it among those whom he shall thus from time to time select and appoint as beneficiaries *in presenti.*   Redf. Wills, part 2, 124 ; *Bull* v. *Bull*, 8 Conn. 47.   The testator intended that the trustee should exercise his discretion in the administration of the fund in all the particulars concerned. Redf. Wills, part 2, 816.

The court should dismiss the bill, and order the fund to be administered according to the discretion of the trustee or settle a scheme for the execution of the trust.   *Wellbeloved* v. *Jones*, 1 Sim. & S. 43.

The opinion of the court was delivered by

Ross, J.   This case stands upon bill and answer.   The orator is the executor of the will of David Poor, and in the performance of his duties as such, July 23, 1859, paid to the defendant, then and now treasurer for the County of Orange, one thousand dollars in satisfaction of a bequest of the testator.   He has not closed the administration of the estate of David Poor in the Probate Court, and now asserts that the bequest of this one thousand dollars is incapable of execution for indefiniteness, and asks the Court of Chancery to decree the restoration of this sum, with its accumulations, to him, that the same may be distributed as a part of the estate of David Poor ; or, if the bequest is found to be

capable of execution, that the Court of Chancery will devise a scheme, and compel the proper execution of the trust, and distribution of the income of the fund. The defendant admits the bequest, the receipt of the money, and that he has not been able thus far to distribute the income arising therefrom; but denies that the trust on which he received and holds the money is incapable of execution, and also asks the court to devise a scheme by which he may annually distribute the income arising from the fund. The Court of Chancery entered a decree against the claim of the orator, and referred the case to masters, among other things, to devise and report a scheme for the annual distribution of the income of the fund in the hands of the defendant. From this decree the orator appealed to this court. The question presented is, whether the bequest is of such a character that it is incapable of execution. The language of the bequest is, " I give the use, interest, and income, after my decease, the sum of one thousand dollars in cash, to the treasurer of the County of Orange and his successors in office; the income of said one thousand dollars to be expended in the education of the scholars of poor people in the County of Orange." Although somewhat inartificially expressed, it is clear, and not denied by the orator, that the testator intended a gift of one thousand dollars to the county treasurer and his successors in office, in trust, to apply the income thereof to the education of the scholars of the poor people of the County of Orange. A definite sum is taken from his estate and appropriated by the testator. A perpetual trustee of that sum is declared, who is directed to appropriate its income to a definite object — the education of the scholars of the poor people of the county. The designated beneficiaries are an unfailing class, always found in every community, and ever in need of aid to obtain an education. This is a bequest to a public and charitable use; to a public use, as the whole community is interested in the education of the scholars of the poor; and to a charitable use, under the Statute of Elizabeth and the decisions of the courts prior and subsequent to the passage of that statute. The doctrine applicable to this class of trusts was early and fully discussed and considered in this State in the case *Exrs. of Burr* v. *Smith,* 7 Vt.

241.   After having been three times argued, and on a careful re-
view of the authorities, WILLIAMS, C. J., p. 307, says: " On ex-
amining the authorities upon this subject, some of the cases will
be found directly applicable to the case under consideration, and
embracing almost every point raised in argument.   These general
principles have been established, which seem to rise necessarily
from the nature of the subject, that the court are to be liberal in
the construction of charitable bequests, to carry into effect the in-
tention of the testator ; that where they can discover the charit-
able intent, they will carry it into execution, and support the charit-
able purpose ; that they will not suffer an equitable interest to fail
for want of a trustee to support it ; and that it has never been
considered as an objection to a charitable use, because it was
general and in some measure indefinite, unless there was an un-
certainty as to the amount intended to be given, or the general
purpose was of so uncertain and indefinite a character that it
could not be executed."   The doctrine of this case has been ad-
hered to by this court in several subsequent cases.   *Button* v.
*American Tract Society*, 23 Vt. 336 ; *McAllister* v. *McAllister's
Heirs*, 46 Vt. 272.   The general purpose of the bequest under
consideration is sufficiently clear and definite—*the education of
the scholars of the poor people of the county*.   The first bequest
considered by the court in the case last cited, was identical in
principle with the one under consideration.   That was a bequest
" for the education of the Freedmen of this nation "—a class more
numerous than the scholars of the poor people of the County of
Orange, and quite as indefinite and difficult to select from.   The
pittance given could not be applied to the education of all the
Freedmen of this nation.   Not all of that class of persons were
proper subjects of education.

If it is more difficult to determine who are the poor people of
the County of Orange than to determine who were the Freedmen
of this nation, surely it is quite as feasible to select from and
apply a limited sum to the education of the scholars of such poor
people as to select and apply the same sum to the education of the
four millions of Freedmen of this nation.   The beneficiaries of
most gifts to a charitable use are of necessity more or less indefi-

nite ; especially is this the case where the benefits of the bequest are to be extended over a large period of time, and to be conferred upon a class of individuals, who are to be the poor of a parish, or the students of a school, during a number of years, no human being can foretell. Yet bequests for such purposes have often been upheld and administered. It is true, in *McAllister* v. *McAllister*, the testator clothed the executor with a discretion as to the appropriation of the bequest. In the case at bar the testator orders the trustee to apply the income to the declared purpose. Its application implies the exercise of discretion. The public schools being open to the scholars of the poor as well as of the rich, and being supported by taxation, it is manifest that the testator did not intend to have his bounty so applied as to relieve the tax-payers in any measure of the burden of the support of these schools. Neither did he intend to have it applied to all of the children of the poor people of the county indiscriminately ; for he has designated a definite class of such children—the scholars, not necessarily those attending schools, but those children of this class who have an aptitude for learning, and who could not avail themselves, for the want of a suitable education, of the powers that the Creator has bestowed upon them, without extrinsic aid. If the trustee had applied the income arising from the trust-fund in good faith and in the exercise of ordinary discretion, in the purchase of books, payment of tuition or board of any of the class of scholars indicated, no one, we think, would doubt about his accomplishing the intention of the testator. If the trustee hesitates to take the exercise of this discretion upon him, it is clearly the province of the Court of Chancery to aid him by devising a scheme for the appropriation of the income of the fund. Where a trust is created for a charitable use, the application will be effected by means of a scheme, to be directed and approved of by the Court of Chancery. Hill Trustees, 461 ; *Moggridge* v. *Thackwell*, 7 Ves. 86 ; *Paice* v. *Archbishop of Canterbury*, 14 Ves. 372 ; 1 Am. Law Reg. N. S. 385, 400.

It may be urged that the administration of this fund is probably to extend over a great number of years, and as the beneficiaries are not declared with certainty, and are constantly shifting, there

will be no one to compel the enforcement of the proper application of the bequest. There is, we think, no doubt but that the State's attorney for the county could compel the enforcement by a proper information, and probably any one as *amicus curiæ* could do the same. 1 Am. Law Reg. 389–402. Neither is there any question but that the trustee can come to the Court of Chancery for direction in the administration of the fund, as was done in *Burr's Exrs.* v. *Smith,* and *McAllister* v. *McAllister, ante.* No question has been made in the pleadings or argument in regard to the regularity of the manner in which the question was raised in the Court of Chancery ; and we do not announce any opinion in regard to the same. The claimant to the. fund and trustee both having asked the direction of the Court of Chancery in the administration of the fund, and that court having made its decree without objection either in that court or in this, this court has no occasion to pass upon that question.

It is apparent, we think, that the testator in making the bequest to the treasurer of the county, supposed that he would be holden on his official bond for the due administration of the fund. But such clearly is not the case. The trustee having come into and invoked the direction of the Court of Chancery, we think, considering the nature of the trust, it is incumbent on that court to require of the trustee a good and sufficient bond to itself, for the fund and its due administration ; and that the masters, in addition to the duties imposed by the mandate of the chancellor, should be charged with fixing the amount and conditions of such bond. It would be almost anomalous for that court to be giving directions for the administration of the fund, with no security to itself for the fund or his obedience of its orders and directions.

The decree of the Court of Chancery is affirmed, with this addition to the duties of the masters. The costs in this court to be subject to the same rule as imposed by the Court of Chancery.

BARRETT, J., dissented,—thinking that the prayer of the bill should be granted ; also, that it was unwarrantable to make said orders on the pleadings.